Dated: August 12, 2011

The following is ORDERED:



TOM R. CORNISH
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE:
DOUGLAS ATKINS  Case No. 10-80188-TRC
DEBRA ATKINS,  Chapter 7
        Debtors.

CHARLES GREENOUGH, TRUSTEE
        Plaintiff,

v.  Adv. No. 10-08049-TRC

DOUGLAS ATKINS and
DEBRA ATKINS,
        Defendants.

## OPINION

On the 19th day of May, 2011, this matter came on for trial on Plaintiff's action seeking to bar Debtors' discharge pursuant to 11 U.S.C. § 727 (a)(2) and/or (a)(4). Appearances were entered by Charles Greenough, Plaintiff, and John Cripps on behalf of Defendants. After trial of this matter, the Court took this matter under advisement. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b), and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

Plaintiff alleges that Debtors concealed and misrepresented an interest in a partnership with Debtor Douglas Atkins' father, in which Douglas is a general partner. Plaintiff alleges that the partnership owns a significant amount of unencumbered equipment that was not listed on Debtors' schedules and should be included in Debtors' estate. Defendants argue that they adequately disclosed everything on their bankruptcy petition and schedules. Based upon the facts of this case and applicable case law, the Court finds in favor of Defendants.

The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.

## FINDINGS OF FACT

Defendants filed their Chapter 7 bankruptcy petition on February 22, 2010. In the Statement of Financial Affairs ("SFA") they referenced an interest in an asphalt company in several places. On page 1, "1. Income from employment or operation of business," Debtors listed as a source of income a "partnership with father in asphalt company." For the year to date, they listed $0 income; for "Last Year" they listed negative income of $101,633, and for "Year before" they listed positive income of $33,971. On page 2, Debtors listed several lawsuits against Douglas Atkins, d/b/a Atkins Asphalt Paving. On page 7, Debtors listed an interest in Atkins Asphalt Paving, Inc., including its Taxpayer I.D. Number, and street address in Spiro, Oklahoma. Under "Nature of Business" Debtors inserted "Asphalt/paving business." Under "Beginning and Ending Dates" they inserted "Still operating, but no work." On Schedule I, they each listed their occupations as "unemployed" with no income. No assets related to the asphalt business were listed on their schedules. On April 4, 2011, Defendants filed an Amended Schedule B to add Douglas Atkins' one-half interest in Atkin's Paving, Inc., a general partnership, with a current value of $0.

During Defendants' 341 meeting, Plaintiff inquired about Atkins Asphalt and was informed by Douglas Atkins that he was a partner with his father, Hoyt Atkins, in that business, and that he has managed it since 2004 or 2005 due to his father's illness. He represented that he and his wife had reviewed and signed their bankruptcy petition at the office of their attorney, Ron Lawson. Plaintiff was given copies of Defendants' tax returns, including partnership tax returns for Atkins Asphalt, at his request.

At trial, Mr. Atkins testified that he can read very little, having only completed the seventh grade. Therefore, he could not verify any of the exhibits presented to him by Plaintiff at trial. He stated that he did not reveal his limited reading abilities at the 341 meeting due to embarrassment. His wife reviewed the bankruptcy petition and schedules and told him what was in those documents prior to him signing the bankruptcy forms.

Mr. Atkins insisted that he held no ownership interest in Atkins Asphalt, in spite of documentary evidence to the contrary. He runs his father's business since his father in unable to do so. He stated that his 341 testimony that he was a partner with his father was incorrect. He only leases equipment from his father for $200/day and works on the paving jobs. He stated that any equipment purchased for use in the business was paid for with his father's personal funds. Mr. Atkins' lease payments are deducted from income generated by the business. Any funds remaining are disbursed, with one-third going to him and two-thirds to his father. All checks for Atkins Asphalt are written by his mother and father, he had no idea whether the company borrowed money, he never personally signed any loan documents as a partner, and never contributed any funds or equipment to the partnership. He also stated that his father has never referred to him as a partner in the business. Mr. Atkins valued his interest in the partnership at zero. The business has a very small

trade area and generates very little work. Its most recent project was a driveway. He deferred to his wife and mother to explain the accounting methods used, as they keep the books and records of the business. He also deferred to Mr. James Lockhart, his accountant and tax preparer of many years, to explain the information on the tax returns. He has never met Mr. Lockhart. Mr. Atkins has attempted to generate other income through a race horse business. He also purchased a dozer with his own funds but that equipment was repossessed.

Mr. Atkins' testimony before this Court was consistent with his testimony during an asset hearing in a state court case. Plaintiff submitted the transcript of the asset hearing as an exhibit in the trial of this adversary case. Mr. Atkins' insisted that he receives one-third of any net income from a paving job and the remaining two-thirds is paid to his father, and that he has no ownership interest in any paving equipment. He stated that he read very little and had very little knowledge regarding the bookkeeping, accounting or tax aspects of the partnership.

Atkins Asphalt Partnership Tax Returns (Form 1065) from 2002 through 2009 list only two partners, Hoyt Atkins and Douglas Atkins, each owning 50%, not the two-thirds/one-third division testifed to by Defendant Doug Atkins. The returns were prepared by Mr. Lockhart, and list Hoyt Atkins as the "Tax Matters Partner." The returns reflect that the partnership owned paving trucks and equipment that were depreciated on behalf of both Douglas and Hoyt Atkins. The 2009 Partnership Return, Form 1065, listed total assets of $ 20,110, and ordinary income as $ 79,073. For 2008, the Partnership Return listed total assets of $ 21,719, and ordinary income of $ 70,838. Defendants reported income or loss from Atkins Asphalt on their Individual Income Tax Returns on Schedule K-1. For 2009, Defendants reported income of $ 39,536 from Atkins Asphalt on their K-1, and reported total income on Form 1040 of $(111,329). For 2008, Defendants reported income

of $35,419 from Atkins Asphalt on Schedule K-1. Partnership returns from 2002 through 2007 Mr. Atkins explained the discrepancy between his testimony that he had no ownership interest in the partnership and the tax returns that showed him as a 50% owner as purely a tax device to benefit his father. He testified that the tax returns were in error.

Mrs. Atkins testified that she and her mother-in-law Carol Atkins provided most of the information for the accountant to use to prepare tax returns. She referred to Mr. Lockhart as "the tax man." She did not review tax returns prior to signing them because she trusted the tax man to prepare them correctly. She delivered tax returns to her husband for his signature, then mailed the signed returns back to Mr. Lockhart. She did not review her tax returns prior to filing bankruptcy or compare them to the information on the bankruptcy petition, schedules, or SFA. She confirmed her husband's testimony that the tax returns did not reflect their understanding of the business relationship between Douglas and Hoyt Atkins. Prior to filing, Mrs. Atkins operated a dog kennel business but has discontinued that business.

Both Defendants' testified that their petition and schedules were prepared by their attorney, Ron Lawson, based upon information they supplied to him. Mrs. Atkins stated that she made numerous visits to Mr. Lawson's office in preparation for filing and provided copies of their tax returns to him. She provided information regarding their assets to the best of her ability. Mr. and Mrs. Atkins reviewed the bankruptcy forms and schedules and signed them in Mr. Lawson's office prior to filing, and were counseled that they were signing the bankruptcy forms under penalty of perjury.

Mr. Lawson testified that he prepared the bankruptcy petition and schedules with the assistance of Defendants. He did review copies of their individual and partnership tax returns prior

to filing, and was familiar with their business operations. He was aware of state court litigation regarding the asphalt business, and was aware of an asset hearing conducted by one of Defendants' judgment creditors, Lawrence Sinor. Mr. Lawson anticipated that problems may arise in the bankruptcy due to lawsuits against Douglas Atkins and repossessions involving equipment. Mr. Lawson took full responsibility for the information and values used in the bankruptcy forms, and stated that based upon his information and assessment, he had accurately disclosed Defendants' interest in Atkins Asphalt on the SFA. He admitted that he should have listed Douglas' partnership interest on the original Schedule B, however, he did not believe he was required to list individual assets held by the partnership on the bankruptcy schedules. He explained that the negative number for 2009 income on number 1 of the SFA was based upon the negative income Defendants reported on their 2009 individual tax return. In his opinion, Defendants were unsophisticated and lacked knowledge regarding the business structure of Atkins Asphalt. He did not intend to mislead the Plaintiff or the Court about Douglas' partnership interest. He could not verify how the equipment listed on the partnership tax returns was acquired or titled.

## CONCLUSIONS OF LAW

"A central purpose of the Bankruptcy Code is to give debtors a fresh start by discharging their preexisting debts." *Standiferd v. U.S. Trustee,* 641 F.3d 1209, 1212 (10th Cir. 2011) (citations omitted.). This benefit, however, is reserved for the "honest, but unfortunate debtor." *Id*. quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). Therefore, § 727 sets forth a number of circumstances under which a discharge may be denied. Plaintiff raises two here: § 727(a)(2), where a debtor transfers or conceals property either after filing bankruptcy or within one year prior to filing; and § 727(a)(4), where a debtor knowingly and fraudulently makes a false oath or account. The

standard of proof the objector to discharge must meet is a preponderance of the evidence. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293-94 (10th Cir. 1997).

The elements to be proven pursuant to 727(a)(2) are that (1) the debtor transferred, removed, concealed, destroyed, or mutilated (2) property of the estate (3) within one year prior to the bankruptcy (4) with the intent to hinder, delay, or defraud a creditor. *Brown*, 108 F.3d at 1293. There must be actual intent to defraud to deny discharge. *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*. 938 F.2d 1073, 1077 (10th Cir. 1991). The requisite fraudulent intent may be established by circumstantial evidence or inferred from debtor's course of conduct. *Farmers Coop Ass'n of Talmadge, Kan. v. Strunk*, 671 F.2d 391, 395 (10th Cir. 1982).

Plaintiff argues that although Defendants included a reference to Doug Atkins' interest in Atkins Asphalt in the SFA, they misrepresented or concealed the value of that interest and the assets owned by the business. He urges the Court to infer from this misrepresentation an intent to hinder, delay or defraud their creditors sufficient to justify a denial of discharge. Debtors have an absolute duty to report whatever interest they have in property and must provide complete and accurate information. Neither the trustee nor creditors should be required to make an independent investigation into debtors' financial affairs. Although the Court agrees that the information supplied may not have been as complete as it could have been, it does not find that there was a concealment. There were references to Atkins Asphalt in the SFA, with a specific reference to "partnership with father in asphalt business."[1] The Court finds Mr. Lawson's estimate of Douglas' interest as $ 0 on Amended Schedule B to be supportable by the evidence of the pending lawsuits, existing judgments,

---

[1] The Court is puzzled as to why Atkins Asphalt was listed as a corporation on Amended Schedule B and No. 18 of the SFA since the tax returns clearly identify it as a partnership.

and the fact that Douglas had no paving work at the time the case was filed. The listing of negative gross income for 2009 in the SFA appears to reflect the negative gross income listed on Defendants' 1040 for 2009.

Even if the Court were to find that a misrepresentation as to value is sufficient to constitute a concealment, it cannot infer an intent to defraud based upon the evidence presented. The Court finds Defendants' and Mr. Lawson's testimony that they did not intend to mislead or defraud Plaintiff, their creditors or this Court to be credible. Defendants do not appear to be sophisticated business persons, and Mr. Atkins is not well-educated. The Court believes that they testified honestly regarding their understanding of the division of profits with Hoyt Atkins, even if such testimony is not supported by their tax returns. They relied upon Hoyt Atkins and Mr. Lockhart to take care of accounting, finances, and tax return preparation. The tax returns, schedules, and forms regarding the partnership and operation of the horse racing and kennel businesses are complex. The Court believes that Defendants did not understand the tax and legal ramifications of the partnership or the information contained in the tax returns. The evidence also indicates that Defendants and Mr. Lawson cooperated with Plaintiff by providing all of the information requested, including copies of the partnership returns dating back to 2002. This does not support an inference of intent to defraud in this case.

To deny a discharge pursuant to 727(a)(4), a creditor must demonstrate that debtor (1) knowingly and fraudulently (2) made a false oath, and (3) that the oath relates to a material fact. *Brown*, 108 F.3d 1290, 1294 (10th Cir. 1997). An omission of assets from the Statement of Financial Affairs or schedule may constitute a false oath. *Calder v. Job (In re Calder)*, 907 F.2d 953, 955 (10th Cir. 1990). However, a false statement caused by mere mistake or inadvertence does not

warrant a denial of discharge. *Brown*, 108 F.3d at 1295.

For reasons similar to those discussed in its analysis of § 727(a)(2), the Court does not find that the required elements have been proven by a preponderance of the evidence to establish that Defendants knowingly and fraudulently made a false oath. The Court does not find that there was an omission of assets sufficient to constitute a false oath. Although Defendants did not list the partnership interest as an asset on Schedule B until April 4, 2011, it is disclosed on the SFA on the date the petition was filed. The information supplied is sufficient to put creditors and Plaintiff on notice that Defendants have an interest in a paving business. The Court is satisfied that Defendants relied upon counsel's advice that individual assets of the partnership need not be included on their bankruptcy schedules. The evidence does not establish the requisite intent to defraud. Again, Defendants' lack of education and sophistication, and their reliance upon the advice of counsel support a finding that they did not intend to provide false information. Their reliance upon counsel to properly fill out the bankruptcy forms and list their assets was reasonable under the circumstances.

## CONCLUSION

Based upon the findings of fact and conclusions of law set forth herein, Plaintiff's request to deny Defendants' discharge is denied.

###